[Cite as *State v. Wilson*, 2025-Ohio-134.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-03-021 |
| - vs - | : | O P I N I O N<br>1/21/2025 |
| | : | |
| SCOTT ALAN WILSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2022 CR 001059

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

George P. Montgomery, for appellant.

**HENDRICKSON, J.**

{¶ 1} Appellant, Scott Alan Wilson, appeals his conviction in the Clermont County Court of Common Pleas for involuntary manslaughter under R.C. 2903.04(B). For the following reasons, we affirm.

### I. Factual and Procedural Background

{¶ 2} On January 5, 1985, Wilson caused serious physical harm to Hannah, the

six-week-old infant daughter of his then-girlfriend Toni Thoroughman.[1]  Specifically, Wilson shook Hannah causing severe brain trauma.  Wilson was charged with felonious assault and the case proceeded to trial.  A jury found Wilson guilty of the lesser included offense of assault under R.C. 2903.13(B), a misdemeanor, concluding that Wilson recklessly caused Hannah serious physical harm.  The trial court sentenced Wilson to six months in jail and ordered him to pay a $1,000 fine.

{¶ 3}   As a result of Wilson's actions, Hannah suffered from lifelong, debilitating medical issues, rendering her immobile and unable to care for herself.  Hannah was taken care of by her grandmother until her grandmother died in November of 2006.  Hannah was then transferred to a nursing home where she died one month later.

{¶ 4}   Hamilton County Deputy Coroner Dr. Michael Kenny conducted an autopsy and concluded that Hannah died as a result of encephalopathy due to the late effects of blunt impact to the head.  Attached to the autopsy was a neuropathology report by Dr. Greg Balko, a neuropathologist, concluding the same cause of death.  The autopsy report was sent to the prosecutor's office in the months following Hannah's death, but no charge was filed.

{¶ 5}   In 2022, Wilson filed a motion to seal the record of his 1985 conviction.  The assistant prosecuting attorney who reviewed the application then discovered the autopsy report stating that Hannah had died.  The Clermont County Prosecutor's Office and Clermont County Sheriff's Office opened an investigation and were able to locate Hannah's medical records from the time of her injury through 2005, Hannah's mother, a nurse from the hospital who remembered Hannah's admission in 1985, one of the lead investigators on the original case, and (eventually) Dr. Kenny.  However, the records from

---

1.  "Hannah" is a pseudonym, adopted in this opinion for purposes of privacy and readability.  *See In re D.P.*, 2022-Ohio-4553 (12th Dist.), fn. 1.

child protective services, as well as the transcript and exhibits from the original trial, were no longer available as they had already been destroyed in accordance with county records retention policies. Additionally, Dr. Balko and the arresting officer in the original investigation had already died by the time the prosecutor's office began reexamining the case in 2022.

{¶ 6} On December 1, 2022, the Clermont County Grand Jury indicted Wilson on one count of involuntary manslaughter and one count of reckless homicide, each a felony of the third degree. The state later dismissed the reckless homicide charge. On March 23, 2023, Wilson filed a motion to dismiss based on preindictment delay and a hearing was held on April 13, 2023. The proceeding was continued in progress for the state to locate Dr. Kenny to testify. Upon locating Dr. Kenny, the hearing resumed on September 27, 2023. Dr. Kenny recalled conducting the autopsy but could not recall why Dr. Balko was contacted to examine Hannah's brain. Nevertheless, Dr. Kenny testified that Dr. Balko's report did not influence his conclusion as to the cause of death. On October 12, 2023, the trial court denied Wilson's motion to dismiss, finding that he had not demonstrated actual prejudice and that the state's delay in indictment was justifiable.

{¶ 7} The case proceeded to trial on January 22, 2024, however, after the state's opening statement, Wilson entered a plea of no contest to the single count of involuntary manslaughter. The trial court sentenced Wilson to serve two years in prison.

{¶ 8} Wilson now appeals his conviction, raising one assignment of error for our review.

## II. Legal Analysis

{¶ 9} Assignment of Error No. 1:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS BASED UPON PREINDICTMENT DELAY VIOLATING APPELLANT'S DUE PROCESS

RIGHTS UNDER BOTH THE FEDERAL AND OHIO CONSTITUTIONS.

**{¶ 10}** In his sole assignment of error, Wilson asserts that the trial court erred by denying his motion to dismiss based upon the state's delay in indicting him after the death of Hannah. Wilson argues that the 16-year delay between the death of Hannah and the indictment made it impossible for him to receive a fair trial and therefore violated his due process rights under the Fifth, Sixth, and Fourteenth amendments to the United States Constitution, as well as Article I Section 10, and Article I Section 16 of the Ohio State Constitution.

**{¶ 11}** An unjustifiable delay between the commission of a criminal offense and an indictment for that offense that causes actual prejudice violates an accused's right to due process of law as provided by the United States and Ohio Constitutions. *State v. August*, 2019-Ohio-4126, ¶ 11 (12th Dist.), citing *State v. Luck*, 15 Ohio St.3d 150 (1984), paragraph two of the syllabus. Nevertheless, the primary protection against stale charges is the applicable statute of limitations. *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *State v. Jones*, 2016-Ohio-5105, ¶ 11. In reviewing a claim of preindictment delay, the court engages in a burden-shifting framework. Initially, the accused bears the burden of establishing actual prejudice, then, the burden shifts to the state to provide evidence to justify the delay. *Jones* at ¶ 13.

**{¶ 12}** Actual prejudice is determined by the circumstances of the case and evidence is considered "as it exists when the indictment is filed" in relation to the prejudice the defendant will suffer at trial due to the delay. *State v. Walls*, 2002-Ohio-5059, ¶ 52. "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Jones* at ¶ 28.

**{¶ 13}** The prejudice advanced must be more than merely speculative. *Id.* at ¶ 20; *See also State v. Heath*, 1997 Ohio App. LEXIS 351, at *5 (12th Dist. Feb. 3, 1997) (proof of actual prejudice must be specific, particularized, and non-speculative). Appellant must show an exculpatory value of the alleged missing evidence in establishing actual prejudice. *State v. Fox*, 2009-Ohio-556, ¶ 37 (12th Dist.). Any claim of prejudice by a defendant must be balanced against the other evidence in order to determine whether actual prejudice will impact the defendant at trial. Only if actual prejudice will occur at trial will the court then determine whether the reason for the delay is unjustified. *Id.* A court will not presume prejudice merely because the delay exceeds a particular length of time. *State v. Adams*, 2015-Ohio-3954, ¶ 98; *accord Fox* at ¶ 37.

**{¶ 14}** Here, Wilson argues that he suffered actual prejudice from the delay in indicting him due to the unavailability of certain witnesses and the destruction of documentary evidence during the interim, and therefore the burden was shifted to the state to prove the delay in indictment was justified. We disagree with Wilson. The unavailable evidence can be divided into two categories, evidence regarding Wilson's assault conviction in 1985, and medical evidence from 2006 at the time of Hannah's death. We find that Wilson has failed to demonstrate actual prejudice from the unavailability of evidence in either category.

Unavailable Evidence from 1985

**{¶ 15}** Wilson argues that he is prejudiced by the unavailability of certain witnesses and records from his 1985 assault case. Specifically, the officer who arrested him in 1985 is deceased, one of the deputies involved in the original investigation was unable to be located, the physician who treated Hannah at the hospital was unable to be located, and Wilson's 1985 trial counsel is deceased. Additionally, the transcript of the trial, trial counsel's file, police investigative records, and child protective services records from

1985 are unavailable. However, Wilson offers no explanation how the records or witnesses from the 1985 case would impact his ability to challenge the head trauma as the proximate cause of Hannah's death in 2006. Thus, we find their usefulness to Wilson's defense is merely speculative.

{¶ 16} Wilson was convicted in 1985 for assaulting Hannah and causing her serious physical harm—this is a judicial fact which Wilson cannot contest or deny. In the present case, Wilson was indicted for involuntary manslaughter in violation of R.C. 2903.04(B), which in pertinent part provides, "[n]o person shall cause the death of another . . . as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree . . . ." Therefore, the sole issue in the present case is whether the injuries Wilson inflicted on Hannah in 1985 proximately caused her death in 2006.

{¶ 17} Wilson has failed to demonstrate how unavailable evidence from the 1985 investigation and subsequent trial bears on this medical question. Although the doctor who treated Hannah in 1985 might have been able to provide some testimony on the relation between Hannah's original injury and her death, Wilson makes no argument to that effect, and what her testimony would have been is entirely speculative. Additionally, the State was still able to locate a nurse involved in Hannah's treatment in 1985, and was able to provide Hannah's medical records from her injury in 1985 through 2005, and Wilson could have still developed his defense from that testimony and evidence. Wilson has failed to demonstrate actual prejudice from the unavailability of evidence from 1985.

Unavailable Evidence from 2006

{¶ 18} Wilson also argues that he was prejudiced by the unavailability of evidence from the time of Hannah's death in 2006. Wilson places primary emphasis on the unavailability of Dr. Balko, who examined Hannah's brain during the autopsy in 2006 but had died by the time the state indicted Wilson in 2022. Wilson also argues that he was

prejudiced by the unavailability of records from Hannah's 2006 nursing home care and hospice care. We disagree with Wilson.

{¶ 19} In his brief, Wilson asserts that Dr. Jason Heil, a neurologist he hired to assist in his defense, was unable to render a complete opinion without Dr. Balko being available to explain his methodology in his portion of the 2006 autopsy report. More specifically, Wilson argues that Dr. Heil was hindered because Dr. Balko was not available to explain why he did not document microscopic injuries to Hannah's brainstem and cervical spine, areas which often show signs of trauma. However, from Wilson's own argument, it seems that Dr. Heil was already able to attack the credibility of Dr. Balko's report for Balko's failure to document microscopic injuries. Had Wilson proceeded to trial, Dr. Heil could have made these criticisms without any direct rebuttal from Dr. Balko—to Wilson's benefit—and perhaps this could have created reasonable doubt in the minds of the jury. Thus, Wilson did not suffer actual prejudice from the unavailability of Dr. Balko to defend his own report. *See State v. Gulley*, 1999 Ohio App. LEXIS 6091, at *10 (12th Dist. Dec. 20, 1999) ("Prejudice will not be found due to the lack of non-exculpatory evidence.").

{¶ 20} Wilson has also failed to demonstrate actual prejudice from the unavailability of Hannah's 2006 records from the nursing home and from hospice care. Wilson fails to identify any specific records that are missing and only generally speculates that they would have been useful to his defense. Wilson has failed to demonstrate actual prejudice from the unavailability of evidence from 2006.

{¶ 21} Wilson has not demonstrated how any unavailable evidence would minimize or eliminate the impact of the state's evidence and bolster the defense, thus he cannot demonstrate actual prejudice from the delay in indictment. As Wilson has failed to demonstrate actual prejudice, we do not need to determine whether the State's delay

in indictment was justified.  Wilson's due process rights were not violated.

### III. Conclusion

{¶ 22} We find the trial court did not err in denying appellant's motion to dismiss. Appellant's assignment of error is overruled.

{¶ 23} Judgment affirmed.


BYRNE, P.J., and M. POWELL, J., concur.